**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 100 PENSION TRUST FUND, et al., | CASE NO. 1:11-cv-02048-LJO-SKO |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' MOTION FOR ATTORNEY'S FEES BE GRANTED** |
| v. | |
| WILLIAM CHARLES PORGES dba ACCELERATED ELECTRIC, et al., | (Docket No. 56) |
| Defendants. | **OBJECTIONS DUE:** 21 days |
| _____/ | |

## I.   INTRODUCTION

On September 9, 2013, default judgment was entered in favor of Plaintiffs Board of Trustees of IBEW Local Union No. 100 Pension Trust Fund, et al. ("Plaintiffs") and against Defendants William Charles Porges DBA Accelerated Electric ("Porges") and Porges Enterprises, Inc. DBA Accelerated Electric Inc. ("Porges Enterprises," collectively "Porges Defendants"). (Docs. 51, 52.)  On September 20, 2013, Plaintiffs submitted a Bill of Costs, and on October 7, 2013, Plaintiffs filed a Motion for Attorney's Fees.  (Docs. 55, 56.)   The Court reviewed the motion and supporting documentation and determined that the matter was suitable for decision without oral argument pursuant to Rule 230(g) of the Local Rules for the United States District Court, Eastern District of California.  As such, the hearing on this matter was vacated.

1   For the reasons set forth below, the Court RECOMMENDS that Plaintiffs' Motion for
2   Attorney's Fees be GRANTED, and Plaintiffs be awarded a reduced amount of attorney's fees in
3   the amount of $22,196.70 and costs in the amount of $575.00.

4   **II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

5   On December 13, 2011, Plaintiffs filed a complaint against the Porges Defendants and
6   Defendant American Contractors Indemnity Company ("ACIC").  (Doc. 1.)  The complaint arises
7   under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor
8   Management Relations Act ("LMRA") and alleges claims for (1) breach of contract/failure to pay
9   fringe benefit contributions, (2) accounting, (3) breach of fiduciary duty, and (4) a claim upon
10  contractor's license bond.  (Doc. 1.)  Plaintiffs alleged that they are each the Plan Administrator of
11  an employee benefit plan under Section 3(3) of ERISA, a fiduciary under Section 3(2)(A)(iii) of
12  ERISA, and the named fiduciary under Section 402(a)(1) of ERISA.  (Doc. 1, ¶ 4.)  Plaintiffs
13  further allege that Porges is a "signatory to the collective bargaining agreement between
14  International Brotherhood of Electrical Workers Local Union 100 and the East Central California
15  Chapter of the National Electrical Contractors Association, and various trust agreements
16  establishing each of the Plaintiffs (collectively, the "Agreements")."  (Doc. 1, ¶ 12.)

17  On January 24, 2012, the Porges Defendants filed an answer, and ACIC filed an answer on
18  April 13, 2012.  (Docs. 10, 12.)  A scheduling order was issued on April 25, 2012, setting
19  deadlines in this action, including a non-expert discovery deadline of November 9, 2012, an expert
20  discovery deadline of December 28, 2012, a non-dispositive motion filing deadline of January 9,
21  2013, and a dispositive motion filing deadline of February 20, 2013.  (Doc. 15.)  A settlement
22  conference was set for December 4, 2012, before Magistrate Judge Sheila K. Oberto, and the
23  pretrial conference and bench trial were set for May 15, 2013, and June 25, 2013, respectively,
24  before District Judge Lawrence J. O'Neill.

25  On November 9, 2012, the parties requested an extension of the discovery deadlines.
26  (Doc. 17.)  On November 13, 2012, District Judge O'Neill denied the requested extension of time,
27  finding that "[t]he parties demonstrate neither good cause nor diligence to extend dates. The

28

1   parties' request reveals the antithesis of diligence . . .  The parties' failure to complete discovery

2   timely is a problem they, not this Court, created."  (Doc. 18, 2:19-24.)

3        On November 27, 2012, in preparation for the settlement conference scheduled for

4   December 4, 2012, Plaintiffs submitted to Magistrate Judge Oberto their confidential settlement

5   conference statement.  (See Doc. 19.)  Defendants, however, failed to submit a statement.  On

6   November 28, 2012, the Court ordered Defendants to submit a confidential settlement conference

7   statement or show cause why sanctions should not be imposed.  (Doc. 20.)  On November 29,

8   2012, Defendants submitted their statement.  (See Doc. 21.)  An informal telephonic conference

9   was held before Magistrate Judge Oberto on December 3, 2012, and, pursuant to the request of the

10  parties, the settlement conference was vacated.  (Doc. 24.)

11       On December 3, 2012, counsel for the Porges Defendants filed a Motion to Withdraw as

12  Attorney, which was denied without prejudice by the Court on January 7, 2013, for being

13  procedurally defective.  (Docs. 23, 26.)  On January 18, 2013, counsel for the Porges Defendants

14  filed a corrected Motion to Withdraw as Attorney, which was not opposed by Plaintiffs.  (Doc. 27,

15  28.)  ACIC filed a Substitution of Attorney on February 7, 2013, which was granted by the Court

16  on February 13, 2013.  (Docs. 29, 32.)  On February 22, 2013, the Court granted the Motion to

17  Withdraw as Attorney for the Porges Defendants.  The Court advised the Porges Defendants that

18  "[a]ll artificial entities must appear in federal court through counsel" and ordered that "[t]he

19  Porges Defendants SHALL retain counsel within thirty (30) days of the date of this order, or be

20  subject to the entry of default and default judgment."  (Doc. 35, 4:19-5:2, 5:22-23 (citing *Rowland*

21  *v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993)).)  The Porges Defendants were also informed of

22  upcoming pressing deadlines in the action, including the pretrial conference set for May 15, 2013,

23  and the trial set for June 25, 2013, and were advised to "seek new counsel immediately."  (Doc.

24  35, 4:3-8.)

25       The Porges Defendants did not retain new counsel.  On May 8, 2013, Plaintiffs filed a

26  "Separate Pretrial Conference Statement," indicating that they had attempted to contact Porges to

27  discuss the preparation of a Joint Statement, but had not received any response.  (Doc. 38.)

28

On May 9, 2013, District Judge O'Neill issued a Notice of Intent to Strike Answers, informing the Porges Defendants that they may not proceed in this action without representation by counsel and that they had "disobeyed the February 22, 2013, order to secure counsel within 30 days." (Doc. 39, 1:18-21.) The Court informed the Porges Defendants of its intent to strike their answer unless, by no later than May 13, 2013, the Porges Defendants appeared through counsel and filed and served papers to show good cause for their failure to file a joint pretrial statement and defend meaningfully the claims against them. (Doc. 39, 1:25-27.) The Porges Defendants were further informed that, if their answer was stricken, the Court would order Plaintiffs to seek entry of default and judgment against them. (Doc. 39, 1:28-2.1)

The Porges Defendants failed to retain counsel and did not file any papers to show cause. On May 14, 2013, District Judge O'Neill ordered that the Porges Defendants' answer be stricken, vacated the pretrial conference and trial, and ordered Plaintiffs to serve papers to either dismiss this action or seek entry of default and default judgment against the Porges Defendants. (Doc. 40.)

On June 10, 2013, Plaintiffs filed a Request for Entry of Default and Motion for Default Judgment against the Porges Defendants. (Docs. 41, 42.) The Porges Defendants did not oppose the motion. On August 6, 2013, Magistrate Judge Oberto issued Findings and Recommendations that Plaintiffs' motion for default judgment be granted, monetary judgment be entered against the Porges Defendants in the amount of $14,857.94, the Porges Defendants be ordered to produce records regarding their operations, and Plaintiffs submit a motion for costs and attorney's fees in accordance with Local Rules 292 and 293. (Doc. 48.) On September 9, 2013, District Judge O'Neill adopted the Findings and Recommendations of the Magistrate Judge, and judgment was entered in favor of Plaintiffs and against the Porges Defendants. (Docs. 51, 52.)

On September 12, 2013, Plaintiffs and ACIC filed a stipulation and proposed order to dismiss Plaintiffs' claims against ACIC subject to the settlement agreement reached between those parties. (Doc. 53.) The Court approved the stipulation, and ACIC was dismissed with prejudice. (Doc. 54.)

On September 20, 2013, Plaintiffs submitted a Bill of Costs, and on October 7, 2013, filed the instant Motion for Attorney's Fees. (Docs. 55, 56.)

# III.   DISCUSSION

Section 1132(g) of ERISA provides that attorney's fees and costs be awarded in an action to enforce payments of delinquent contributions.  Reasonable attorney's fees and costs of the action may be awarded to a Trust Fund that receives a judgment in its favor. *See* 29 U.S.C. § 1132(g)(2)(D); *Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1227 (N.D. Cal. 2005).  The Porges Defendants are signatories to the Inside Wireman's Agreement between the East Central California Chapter of the National Electrical Contractors Association and Local Union No. 100 of the International Brotherhood of Electrical Workers for June 1, 2009, through May 31, 2012 ("IWA"), which provides in pertinent part:

> All Trust payments shall be mailed to reach the appropriate Trust Office no later than fifteen (15) calendar days following the end of each calendar month.  Failure to forward all amounts due on time shall result in a 10% penalty as well as in liability for audit costs, administrative costs, collections, attorney fees, liquidated damages, etc.  Said amounts shall be sought if it is necessary for the funds to institute suit to recover delinquent contributions.

(Cole Decl. in support of Plaintiff's Motion for Default Judgment, Doc. 42-4, Exh. A., Art. XVIII, § 18.1).  As judgment has been entered in favor of Plaintiffs (Docs. 51, 52), Plaintiffs are entitled to attorney's fees and costs arising from this litigation.

Plaintiffs seek $575 in costs and $24,611 in attorney's fees.  (Docs. 55, 56-1.)

## A.   The Amount of Attorney's Fees to Be Awarded

### 1.   Legal Standard

The Ninth Circuit has adopted the hybrid lodestar/multiplier approach as the proper method for determining attorney's fees in ERISA actions.  *Van Gerwen v. Guaranteed Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999); *cf. Ketchum v. Moses*, 24 Cal. 4th 1122, 1133-36 (2001) (discussing the lodestar approach in California).

> The lodestar/multiplier approach has two parts.  First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonably hourly rate.  *See D'Emanuele [v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990)]; *Hensley [v. Eckerhart*, 461 U.S. 424,] 461 (1983).  The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  *See Hensley*, 461 U.S. at 433.  A district court should exclude from the lodestar amount hours that are not

reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.  Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n. 9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation).  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin.*, 214 F.3d at 1045.

The fee applicant "has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Blum*, 465 U.S. at 896 n.11; *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005); *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).  The Ninth Circuit has further explained that,

> [o]nce the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers [v. City of L.A.*, 796 F.2d 1205,] 1210 [(9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). ]  This determination "is not made by reference to rates actually charged by the prevailing party." *Id.*  The court should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation." *Id.* at 1210-11.  Either current or historical prevailing rates may be used. *Missouri v. Jenkins*, 491 U.S. 274, [ ] (1989); *Burgess v. Premier Corp*., 727 F.2d 826, 841 (9th Cir. 1984).  The use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the "totality of the circumstances and the relevant factors, including delay in payment." *Jordan [v. Multnomah Cnty.*], 815 F.2d 1258,] 1262 [(9th Cir. 1987).]

*D'Emanuelle*, 904 F.2d at 1384, *overruled on other grounds by Burlington v. Dague*, 505 U.S. 557 (1992).  The "relevant legal community" in the lodestar calculation is generally the forum in which the district court sits. *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000); *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *Schwarz*, 73 F.3d at 906.

6

**2.    Analysis**

        **a.    Attorneys Rendering Services**

Plaintiffs indicate that the following attorneys and paralegals rendered billable services in this action:

    1.    Mike Moss, Esq. ("MEM"), has been practicing law since 1974, and has represented Taft-Hartley fringe benefit trust funds (including, but not limited to, Plaintiffs) since 1981;

    2.    Henry Y. Chiu, Esq. ("HYC"), has been practicing law since December 2002 and has been involved in certain aspects of litigation on behalf Taft-Hartley fringe benefit trust funds (including, but not limited to, Plaintiffs) since 2005;

    3.    Lindsay Silverstein, Esq. ("LAS"), has been practicing law since December 2009 and has worked on matters pertaining to Taft-Hartley fringe benefit trust funds (including, but not limited to, Plaintiffs) since 2011;

    4.    Laura Brandon ("LJB"), is a paralegal who served as a legal secretary from November 1976 to December 2007 and as a paralegal from December 2007 through present; and

    5.    Debbie Merritt ("DJM"), is a paralegal who served as a legal secretary and assistant since 1992.

        **b.    Time Expended on Litigation**

Plaintiffs submitted the Declaration of Henry Y. Chiu in support of their motion for attorney's fees. (Doc. 56-2.) Exhibit C provides legal invoices for services rendered beginning on October 12, 2011, and ending on August 6, 2013. (Doc. 56-2, Exh. C.) Plaintiffs indicate that they have redacted services pertaining to Defendant ACIC and "blocked billed" services, where the services pertaining to the Porges Defendants and Defendant ACIC could not reasonably be segregated. (Chiu Decl., Doc. 56-2, ¶ 7.)

Plaintiffs maintain that they had regularly attempted to resolve the issue of delinquent contributions amicably, even after the litigation had commenced, to allow for a quicker and more mutually agreeable resolution. (Chiu Decl., Doc. 56-2, ¶ 8a.) Plaintiffs note that the Porges

1    Defendants were previously represented by counsel, who raised issues that needed to be addressed

2    by the parties in an attempt to resolve the litigation.  (Chiu Decl., Doc. 56-2, ¶ 8b.)  Plaintiffs

3    assert that they propounded written discovery and set depositions, and the Porges Defendants

4    failed to respond to the written discovery and objected to the depositions.  (Chiu Decl., Doc. 56-2,

5    ¶ 8c.)  Plaintiffs' counsel made several efforts to meet and confer with counsel for the Porges

6    Defendants, but were unsuccessful in resolving the issues.  (Chiu Decl., Doc. 56-2, ¶ 8c.)

7    Plaintiffs contend that the action was slated for trial, which required preparation, and that fees are

8    therefore sought related to trial preparation and procedures prior to the Court's striking of the

9    Porges Defendants' answer and entering default and default judgment.  (Chiu Decl., Doc. 56-2, ¶

10   8d.)  Plaintiffs assert that they also incurred attorney's fees related to a preliminary asset search

11   that was conducted to verify claims by the Porges Defendants that they could not afford to pay the

12   delinquent contributions or any amounts greater than their settlement offers.  (Chiu Decl., Doc.

13   56-2, ¶ 8e.)

14       The Court has reviewed the invoices provided and finds that the categories of fees

15   generally track the activities occurring in this action.  There appear to be, however, duplicative and

16   excessive fees.

17       Generally, two attorneys cannot bill for attending the same meeting or communicating with

18   each other.  *See In re Mullins,* 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F.

19   Supp. 2d 1092, 1099 (D. Haw. 2010).   Thus, when a party's counsel communicates with

20   co-counsel, the Court deducts the duplicative billing.  *See Mullins*, 84 F.3d at 467; *Robinson*, 717

21   F. Supp. 2d at 1099.  Here, there were several entries in which two or more attorneys billed on the

22   same day for emailing or otherwise communicating with their co-counsel.  (*See*, *e.g.*, Chiu Decl.,

23   Doc. 56-2, Exh. C, entries for 10/13/11, 9/11/12, 12/3/12, 4/8/13, 4/12/13, 4/18/13, 5/7/13).

24       There are also numerous entries where counsel does not identify the tasks performed, and

25   merely indicates that they reviewed emails or emailed staff.  (*See*, *e.g.*, Chiu Decl., Doc. 56-2,

26   Exh. C, entries for 10/14/11, 10/15/11, 10/22/11, 2/19/12, 2/20/12, 3/5/12, 4/15/13, 4/22/13.)

27   Attorney's fees hours may be reduced where the documentation of the hours is inadequate.  *See*

28   *Chalmers*, 796 F.2d at 1210.

1    Further, the billing records also contain several entries set out in a block billing format and,

2    in addition to a limited description of the task, it is impossible to determine how much time was

3    spent on discrete tasks within each billing entry.  (*See*, *e.g.*, Chiu Decl., Doc. 56-2, Exh. C, entries

4    for 2/16/12, 2/29/12, 4/10/12, 4/17/12, 10/8/12, 10/29/12, 11/8/12, 11/9/12, 2/6/13, 5/7/13,

5    5/17/13, 6/10/13, 7/23/13, 7/25/13.)    However, while "the fee applicant bears the burden of

6    submitting 'evidence supporting the hours worked and the rates claimed,'" counsel is "'not required

7    to record in great detail how each minute of his time was expended.'" *Fischer v. SJB-P.D. Inc.*,

8    214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley,* 461 U.S. at 437 n.12.).  Thus, in *Fischer*,

9    the Ninth Circuit explained that, rather than refusing to award any fees where documentation is

10   insufficient because of block-billing, the court should either request more information or "simply

11   reduce[] the fee to a reasonable amount." *Id.*  (citing *Hensley*, 461 U.S. at 433 for the proposition

12   that a district court can "reduce" the fee award where the documentation is inadequate).

13        In sum, the issues noted above require a reduction to the attorney's fees sought by

14   Plaintiffs.  Accordingly, the Court RECOMMENDS that the total amount of attorney's hours be

15   reduced by 10 percent to adjust for any excessive or duplicative billing by Plaintiffs' counsel.  *See*

16   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]the district court can

17   impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of

18   discretion and without a more specific explanation.").

19              **c.      Rates of Compensation**

20        The Chiu Declaration indicates that Mr. Moss' regular hourly rate is $340 per hour, and his

21   negotiated/billing rate throughout this action was $285 per hour.   (Chiu Decl., Doc. 56-2, ¶ 10.)

22   Mr. Chiu's billing rate was $240 per hour through January 2013, and increased to $260 per hour in

23   February 2013.  (Chiu Decl., Doc. 56-2, ¶ 11.)  Ms. Silverstein's billing rate was $140 per hour

24   through January 2013, and increased to $160 per hour in February 2013.  (Chiu Decl., Doc. 56-2,

25   ¶ 12.)  Ms. Brandon's billing rate was $100 per hour, and Ms. Merritt's billing rate was $80 per

26   hour.  (Chiu Decl., Doc. 56-2, ¶¶ 13-14.)  Mr. Chiu declares that he believes these rates are

27   reasonable in the community based upon the experience of the professionals and the type of work

28   performed.  (Chiu Decl., Doc. 56-2, ¶¶ 10-14.)

In determining the reasonable hourly rate, the starting point for calculating attorney's fees is the prevailing market rate in the relevant community. *United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008) (citation and quotation marks omitted). The court must also consider the experience, skill, and reputation of the attorney requesting the fee. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citing *Chalmers*, 796 F.2d at 1210); *see also Phipps v. Tileco Employee Ben. Plan*, No. CIV S-11-0208 JAM, 2011 WL 6003194, at *6 (E.D. Cal. Nov. 30, 2011).

Here, the hourly rates requested of $285 per hour for an attorney with 39 years' experience, $240 to $260 per hour for an attorney with 11 years' experience, $140 to $160 per hour for an attorney with four years' experience, and $80 to $100 per hour for paralegals are reasonable rates in this district for professionals with the levels of experience described by Mr. Chiu. *See*, *e.g.*, *Phipps*, 2011 WL 6003194, at *7 (awarding an rate of $300 an hour in an ERISA action to an attorney with 27 years' experience); *see also Lasheen v. Loomis Co.*, No. 2:01-CV-0227-LKK-EFB, 2013 WL 1178209, at *11 (E.D. Cal. Mar. 21, 2013) *report and recommendation adopted*, No. 2:01-CV-0227-LKK-EFB, 2013 WL 5375815 (E.D. Cal. Sept. 24, 2013) (awarding attorney fee rates from $150 to $250 per hour and a paralegal rate of $100 per hour in an ERISA action); *Bd. of Trustees of Kern Cnty. Elec. Pension Fund v. Burgoni*, No. 1:08-CV-0498-LJO JLT, 2012 WL 2200088 (E.D. Cal. June 14, 2012) (awarding attorney rates from $95 to $250 per hour); *Columbus Life Ins. Co. v. Hill*, No. 2:09-CV-0947 FCD DAD, 2010 WL 3717285, at *2 (E.D. Cal. Sept. 16, 2010) (awarding an attorney's fee rate of $250 per hour).

Accordingly, the Court RECOMMENDS that the rates requested of $285 for Mr. Moss, $240 to $260 for Mr. Chiu, $140 to $160 for Ms. Silverstein, $100 for Ms. Brandon, and $80 for Ms. Merritt be approved.

**3.     Conclusion**

The following time and rates are recommended for an award of attorney's fees:

///

///

///

| Attorney | Hours | Hourly Rate | Total Requested | 10 Percent Reduction | Total Award |
|----------|-------|-------------|-----------------|----------------------|-------------|
| Mr. Moss | 1.4 | $285.00 | $399.00 | ($39.90) | $359.10 |
| Mr. Chiu (10/2011-1/2013) | 34.1 | $240.00 | $8,184.00 | ($818.40) | $7,365.60 |
| Mr. Chiu (2/2013-8/2013) | 44.5 | $260.00 | $11,570.00 | ($1,157.00) | $10,413.00 |
| Ms. Silverstein (10/2011-1/2013 | 11.2 | $140.00 | $1,568.00 | ($156.80) | $1,411.20 |
| Ms. Silverstein (2/2013-5/2013) | 17.0 | $160.00 | $2,720.00 | ($272.00) | $2,448.00 |
| Ms. Brandon | 1.7 | $100.00 | $170.00 | ($17.00) | $153.00 |
| Ms. Merritt | 0.65 | $80.00 | $52.00 | ($5.20) | $46.80 |
|  |  |  | $24,663.00 | ($2,466.30) | **$22,196.70** |

For the reasons set forth above, all fees requested are reduced by a 10 percent "haircut" to adjust for excessive or duplicative billing. *See Moreno*, 534 F.3d at 1112.

Accordingly, the Court RECOMMENDS that Plaintiffs be awarded attorney's fees in the total amount of $22,196.70.

**B.      The Amount of Costs to Be Awarded**

Plaintiffs submit a Bill of Costs seeking $575 in costs -- $350 for the filing fee and $225 for the service of summons and subpoena.  (Doc. 55; *see also*  Chiu Decl., Doc. 56-2, ¶¶ 5-6, Exhs. A, B.)  The costs requested are reasonable.

Accordingly, the Court RECOMMENDS that Plaintiffs be awarded costs in the total amount of $575.00.

### III.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1.      Plaintiffs' Motion for Attorney's Fees be GRANTED;

11

2.    Plaintiffs be awarded attorney's fees against Defendants William Charles and Porges Enterprises, Inc. at Accelerated Electric, Inc. in the reduced amount of $22,196.70; and

3.    Plaintiffs be awarded costs Defendants William Charles and Porges Enterprises, Inc. at Accelerated Electric, Inc.in the amount of $575.00.

The Clerk of the Court is DIRECTED to serve a copy of this order on Defendants William Charles and Porges Enterprises, Inc. at Accelerated Electric, Inc., 855K South Main Street, #441, Fallbrook, CA 92028.

Within twenty-one (21) days of service of this recommendation, any party may file written objections to this order with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Order." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 16, 2013**                    **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE

12